SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
James C. Shah
Natalie Finkelman Bennett
475 White Horse Pike
Collingswood, NJ  08107
Tel.: 856-526-1100
Fax: 866-300-7367
jshah@sfmslaw.com
nfinkelman@sfmslaw.com

*Additional counsel on signature page*

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| KW SCHRAMEK TRUCKING,<br><br>                              Plaintiff,<br><br>          vs.<br><br>CUMMINS, INC.,<br><br><br>                    Defendant. | Civil Action No.:<br><br><br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff, KW Schramek Trucking ("Plaintiff"), brings this action against

Defendant, Cummins, Inc., ("Cummins" or "Defendant"), and states as follows:

## THE PARTIES, JURISDICTION AND VENUE

1.      Plaintiff is a Colorado corporation with its principal place of business at 7395 Southmoor Drive, Fountain, Colorado, and, thus, is a citizen and resident of Colorado. Plaintiff's sole place of business is in Colorado.

2.      Cummins is an Indiana corporation with its principal place of business at 500 Jackson Street, Columbus, Indiana, and, thus, is a citizen and resident of Indiana.

3.      Non-party PACCAR, Inc., ("PACCAR"), is a Delaware corporation with its principal place of business at 777 106th Avenue NE, Bellevue, Washington.  Peterbilt Motor Company and Kenworth Truck Company are divisions of PACCAR, sell trucks using the engines at issue herein, and, in that capacity, are referred to as Cummins' partners herein.

4.      This class action is within the original jurisdiction of this Court pursuant to 28 U.S.C. § 1332(a), and 28 U.S.C. § 1332(d)(1)(B) and (d)(2) (the Class Action Fairness Act).  The aggregate amount in controversy exceeds five million dollars ($5,000,000), exclusive of interest and costs, and at least one member of the putative classes is a citizen of a state different than that of Defendant.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction in this District.  Defendant has advertised and solicited the sale of its products to customers in this District, maintains authorized repair and other facilities through its partners and dealerships within this District, has provided warranty services in this District, and has received substantial revenue and profits from the sale of the engines at issue herein and repair of trucks and other vehicles, engines, and other products and services in this District.

6.      This Court has personal jurisdiction over Defendant.  Defendant intentionally and purposefully placed the engines at issue herein into the stream of commerce within New Jersey and throughout the United States.  Defendant maintains regular and systematic contacts with New Jersey and regularly does business within New Jersey.  As such, it has conducted substantial business in this judicial District.

## GENERAL FACTUAL ALLEGATIONS

7.      In early 2001, PACCAR and Cummins announced the formation of a partnership and long-term agreement for the development, design, manufacture, assembly, marketing and sale of, among other things, heavy duty long-haul tractor trucks (the "PACCAR/Cummins Venture").

8.      PACCAR and Cummins, as part of the PACCAR/Cummins Venture, jointly developed, designed, manufactured, marketed, assembled and sold heavy duty trucks (the "Subject Vehicles") that purportedly would comply with the Environmental Protection Agency's ("EPA") 2010 Heavy Duty On Highway Diesel Emissions Standard ("EPA Emission Standard") under both the Peterbilt and Kenworth brands.

9.      Specifically, Cummins and its partner, PACCAR, designed, manufactured, marketed, assembled and sold 2010 and later model year Heavy Duty On Highway Diesel vehicles powered by the Cummins ISX15 diesel engine ("Subject Engines").

10.     The Subject Engines employ engine exhaust emissions control devices (referred to as "auxiliary emissions control devices", (or "AECD") to reduce exhaust toxins and bring the engine emissions within EPA Standards.  These emissions controls include an electronic on-board diagnostic ("OBD") system that monitors and reports malfunctions that impact the emissions control devices.

11.     The Subject Engines employ an Engine Protection System that monitors critical engine and emissions systems, logs diagnostic fault codes so as to detect over or under normal operating conditions ("out of range conditions"), and alerts the operator of system malfunctions, derates or shuts down the engine to prevent engine damage or an increase in exhaust emissions levels.

12.    The Subject Engines employ emissions control devices that are comprised of the Exhaust Recirculation System, the Diesel Exhaust Fluid System ("DEF"), the Aftertreatment System (comprised of the Cummins Diesel Oxidation Catalyst ("DOC"), the Diesel Particulate Filter ("DPF"), and the Selective Catalytic Reduction Catalyst ("SCR")), and the Electronic Control Module ("ECM"), (referred to herein collectively as the "Exhaust System"). The Exhaust System is materially identical in all Subject Engines.

13.    PACCAR uniformly marketed the Subject Vehicles and Subject Engines as functioning reliably, and did not disclose any of the known defects in the Exhaust System.

14.    The on-board diagnostics system installed in the Subject Vehicles continuously monitors and regulates engine performance, electrical systems, braking systems, transmission performance, tire pressure systems, and other components, as well as information regarding the safety, emissions and performance functions of the Subject Vehicles by constant analyses that store trouble or fault codes and provide data to Defendant and/or its authorized service providers' diagnostic computers used to determine the meaning and potential repair associated with the fault codes.

15.    According to www.insite.cummins.com, INSITE was designed to make "quick and easy access to [your] engine's electronic performance information."

16.    In-cab engine warning lamps serve as the sole indicator for Plaintiff's tractor drivers to be made aware of engine and environmental Exhaust System problems.

17.    When an in-cab engine warning lamp illuminates, the Subject Vehicle's driver is alerted that there are problems with the Subject Engine or Exhaust Systems that require that the Subject Vehicle be brought to one of the authorized service providers that service the PACCAR vehicles that include the Subject Engines.  After a short time of continued driving, a second warning lamp is illuminated and results in the engine being de-rated (regulated to diminish power output by the Subject Engine), and a third warning lamp illumination further de-rates the Subject Engine to speeds of less than five or ten miles per hour.  Finally after a short de-rated operating time, the Subject Engine is shut down by the on-board diagnostic system.

18.    When Subject Engine warning illuminations occur, the Subject Vehicle's driver is forced to divert from the intended trucking route to one of Subject Engine's authorized service providers, if the de-rating system will permit the driver to reach one of these authorized service providers.

19.     Defendant deliberately does not release explanations or descriptions of the problems that are tethered to the numeric diagnostic codes or fault codes to its customers and, despite requests, have failed or refused to provide such information.  As such, Plaintiff and Class (defined below) members have no way of identifying, diagnosing or fixing faults that are detected and have no choice but to bring the Subject Vehicle to the authorized service providers for service.

20.     On information and belief, Defendant knew at the time that Plaintiff and Class members purchased the Subject Vehicles that the Subject Vehicles with the Subject Engines were experiencing Subject Engine and Exhaust System failures, that repeated repairs were required for the Subject Vehicles with the Subject Engine and the Exhaust System, and maliciously and deliberately failed and refused to disclose these conditions to Plaintiff and the Class members prior to or at the time of Plaintiff's and the Class Members' purchase of the Subject Vehicles.

21.     For the model years 2007 through 2009, PACCAR vehicles equipped with Cummins ISX15 engines had significant problems with exhaust gas recirculation ("EGR"), the EGR valves, diesel particulate filter ("DPF") systems and other sensors, and other piping and containment components for the Exhaust System, that caused major failures in the engines.

22.     Without correcting the known problems with the 2007 through 2009 model year vehicles and engines, Defendant and its partner, PACCAR, unconscionably and unreasonably designed, manufactured, assembled, marketed and sold the Subject Vehicles with Subject Engines and vehicle diagnostic systems with knowledge and deliberate indifference that the problems with the prior generation of engines had not been corrected.

23.     Among other things, at the time of Plaintiff's purchases, Cummins warranted to Plaintiff that the Subject Engines would be free from defects in material and workmanship and that in the event a defect manifested, Cummins was obligated to correct the defect. *See*, for example, Exhibit A.

24.     Despite the foregoing representations and warranties, Cummins and its partners developed, designed, manufactured, marketed, assembled and sold Subject Vehicles and Subject Engines that suffered problems and defects known to Defendant and intentionally concealed this information from Plaintiff and others, which problems and defects include, but are not limited to:

a.     Persistent manufacturing and assembly and/or design flaws in the Subject Engines' EGR valve assembly hardware, as well as controlling sensors or software and EGR coolers that allow for EGR system failures, cause, contribute to, or caused EGR valve leaks, EGR cooler leaks, EGR valve operating failures and electrical connection failures, as well as engine fuel injector control sensor or

software and actuators, and turbocharger control system, sensor and software failure.

b.      Persistent manufacturing and assembly and/or design flaws in the Exhaust System DPF, DOC, and SCR, which allow for failures in the doser valve control system, sensors and software and doser valve manifold failures.

c.      Persistent manufacturing and assembly and/or design flaws in the Exhaust System's hydrocarbon doser, which allow for failures in the doser valve, doser valve sensors and software, doser manifold and related sensors, as well as persistent premature cracking, clogging, and plugging. *See* CK Commercial Vehicle Research, 9-20-10 Best Practice Report.

d.      Other persistent manufacturing and assembly and/or design flaws in the Subject Engines and the Exhaust System (including the EGR and DPF), which allow for failures in several sensors, including the exhaust gas pressure sensor, the intake manifold pressure sensor, the EGR temperature sensor, the DPF temperature sensor, the DPF differential pressure sensor, the intake manifold temperature sensor, the oil pressure sensor, the oil temperature sensor, and/or the ambient air pressure sensor.

e.      Other design flaws in the Exhaust System's piping and containment components, which allow for problems in the piping and containment components.

25.     Reportedly, other fleet owners whose tractors had Cummins engines and Exhaust System experienced DPF premature cracking, often before the 200,000-mile interval, at a high rate.  Inferentially, the misdesign and/or substandard materials and workmanship in the DPF also cause excessive clogging and plugging, which require repeated and costly de-clogging repairs.  It follows that clogging and plugging in the DPF, stemming from misdesign and/or substandard materials and workmanship, caused or contributed to failures in the Subject Engines' sensors and Exhaust System.  *See* CK Commercial Vehicle Research, 9-20-10 Best Practice Report.

26.     From April 15, 2011, through February 17, 2014, Cummins issued at least 17 technical service bulletins ("TSBs"), listing problems with the Subject Engines and Exhaust Systems installed by Cummins and its partners in Subject Vehicles like Plaintiff's Subject Vehicles.  These TSBs acknowledge problems, among others, with the DPF (including cracking) and problems with valves and seals elsewhere in the Subject Engines.  The TSBs also acknowledge problems with the selective catalytic reduction sensor; problems with thermostats, including missing flange seals in the Subject Engines resulting in thermostat failures; problems with the Exhaust System's crankcase breather system; and/or improper torqueing of the fuel pump brace.

27.    The Subject Vehicles and Subject Engines had problems and defects which were known to Defendant and to PACCAR and intentionally concealed at the time such products were placed in the stream of commerce and/or at the time of sale.

28.    Defendant failed to publish information or disclose material information which would have affected the purchase of the Subject Vehicles, specifically the problems with Exhaust System and the on-board diagnostic systems, which problems were maliciously and knowingly concealed by Defendant.

29.    Contrary to Cummins' representations, the Subject Engines had problems with materials and workmanship and/or defects in design such that Subject Vehicles repeatedly and frequently broke down, failed to function properly, and failed to function reliably and dependably.  The problems and defects resulted in warnings, deratings, and shutdowns, requiring expensive repairs in an effort to remediate the faults and frequent and excessive down times for the Subject Vehicles.

30.    Defendant, through the authorized service providers, failed to correct these repeated problems with the Subject Vehicles in spite of repeated and numerous attempts.  Defendant knew and intentionally concealed or omitted, at the time of sale and throughout all of the repair efforts, that these problems or defects

would persist and continue to cause the Subject Engines to break down or otherwise fail.

31.    By failing to remedy the problems in the Subject Vehicles with materials, workmanship and/or the design of the Subject Engines, the Exhaust System, and/or the on-board diagnostics, Defendant has breached its express warranties and statutory warranties.

32.    Information regarding Defendant's acts and/or omissions that misled and/or concealed the substandard materials and workmanship and/or design defects regarding the 2007 to 2009 generation of engines and the 2010 generation of Subject Vehicles with Cummins ISX15 engines, their Exhaust System, and their on-board diagnostic systems, has been maliciously, knowingly and intentionally concealed by Defendant, lies within the exclusive control of Defendant, and is otherwise not available to Plaintiff and the Class members.  The identity of persons employed by or for Defendant who knew about and intentionally concealed the foregoing information lies within the exclusive control of Defendant and the identity of these persons has been has not been revealed to Plaintiff, the Classes, or the public.  The factual information set forth in this Complaint is principally based on Plaintiff's and the Class members' experiences with their Subject Vehicles, TSBs issued by Defendant that were discovered on the Internet, Plaintiff's and the Class members' conversations with other owners of Subject Vehicles and

Cummins engines, industry research reports regarding Defendant's products and its partners' products from 2010 through 2012, other written reviews and complaints of the Subject Vehicles and Cummins' Subject Engines, and other publically available information.

## PLAINTIFF'S FACTUAL ALLEGATIONS

33.     In reliance upon representations and/or omissions made by Defendant and its partners, Plaintiff was induced to purchase two  Subject Vehicles on or about the dates indicated:

a.      On or about March 11, 2013, Plaintiff purchased a used 2013 Kenworth W900L tractor (VIN  #1XKWD49X5DJ350086) for $133,045 from Coopersburg Kenworth in Coopersburg, PA, for use in its Colorado-based business; and

b.      On or about March 7, 2014, Plaintiff purchased a used 2013 Kenworth T660 tractor (VIN #1XKAD49X6DJ350124) for $107,800 from Kenworth Sales Co. in West Valley City, Utah, for use in its Colorado-based business.

34.     Plaintiff's Subject Vehicles experienced repeated and frequent break downs, Subject Engine derating and shutdown, DPF plugging, clogging and cracking, and other Exhaust System failures that rendered the Subject Vehicles inoperable and unusable for long periods of time.

35.    Plaintiff would not have purchased vehicles equipped with Subject Engines or not have paid as much for those vehicles had it been aware of the defects in the Exhaust System and the problems said defects would cause.

36.    Defendant, through its partners and the authorized service providers, has performed warranty repairs on Plaintiff's Subject Vehicles, as well as out-of-warranty repairs.  Neither the warranty services provided by Defendant's authorized service providers nor the repairs paid for by Plaintiff at the authorized service providers fixed the Subject Engines.

37.    Defendant's malicious, knowing, and intentional omissions, misrepresentations, and unconscionable practices with regard to the problems with the Subject Engines caused Plaintiff to suffer substantial ascertainable losses and damages including, but not limited to out-of-pocket costs of repair, towing and lodging, rental costs of replacement vehicles, diminished value of the Subject Vehicles, and goodwill.

38.    Plaintiff expected to receive Subject Vehicles and engines that were at least worth their purchase price, but instead received Subject Vehicles and engines that were worth significantly less than their purchase price, and had substantially diminished resale value and intrinsic value.

## CLASS ACTION ALLEGATIONS

39.     Plaintiff brings this action on behalf of itself and all others similarly situated, as members of the Class proposed below, under Federal Rule of Civil Procedure 23.  The requirements of subsections (a), (b)(2), and (3) to Rule 23 are met with respect to the Classes defined below.

40.     Plaintiff seeks to represent, and bring this action on behalf of, the following Classes:

        a.      Pennsylvania Class—All persons and entities, in the Commonwealth of Pennsylvania, who are users, purchasers, subsequent purchasers, owners, subsequent owners, and lessors (having purchased via a TRAC option or some rights to residual purchase of the vehicles at lease end) of a vehicle powered by a Subject Engine.  Plaintiff is a member and putative Class representative of the Pennsylvania Class.

        b.      Utah Class—All persons and entities, in the State of Utah, who are users, purchasers, subsequent purchasers, owners, subsequent owners, and lessors (having purchased via a TRAC option or some rights to residual purchase of the vehicles at lease end) of a vehicle powered by a Subject Engine.  Plaintiff is a member and putative Class representative of the Utah Class.

41.     The above proposed Classes exclude:  (1) any entity in which Defendant has a controlling interest, and its legal representatives, officers,

directors, employees, assigns, and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; (3) Class Counsel; and (4) claims for personal injury and/or emotional distress.

42.    On information and belief, Defendant's partners sold thousands of Subject Vehicles with Defendant's Subject Engines.  Each of these Subject Engines contain a defective Exhaust System.  While the precise number and identities of the members of the Classes are unknown to Plaintiff, this information can be ascertained through reasonable discovery and appropriate notice.  Given Defendant's sales volume, there will be at least 40 putative Class members as to each individual claim asserted by Plaintiff.

43.    Lack of public information regarding the problems with materials and workmanship and/or design flaws was material to Plaintiff's and the Class and members' purchases of the Subject Vehicles with the Subject Engines. Information material to the transactions was maliciously and knowingly concealed from Plaintiff and the Class members by Defendant.

44.    Defendant intended that Plaintiff and the Class members would rely on such malicious, knowing and intentional concealments of material information; specifically, the problems and defects set forth throughout this pleading, which induced Plaintiff and the Class members to purchase the Subject Vehicles.

45.    Had the problems with the substandard materials and workmanship or design defects not been maliciously, knowingly and intentionally concealed, Plaintiff and the Class members would not have purchased or would have paid less for the Subject Vehicles.

46.    There are numerous common questions of law and fact that predominate over any questions affecting only individual members of the Classes. Among these common questions of law and fact are the following:

a.    Whether the Subject Vehicles with the Subject Engines, and specifically the Exhaust System, were and are defective;

b.    Whether Cummins breached its warranty obligations;

c.    Whether Cummins knew the Exhaust System was defective;

d.    When Cummins learned that the Exhaust System was defective;

e.    Whether Cummins knew that the Exhaust System would not operate as represented for the expected life of the Subject Vehicles and with the Subject Engines;

f.    Whether Cummins failed to disclose the defect in the Exhaust System;

g.    Whether the defect diminished the value of the Subject Vehicles equipped with the Exhaust System; and

h.    Whether Plaintiff and the members of the Classes have suffered damages as a result of the conduct alleged herein, and, if so, the measure of such damage.

47.    The claims of Plaintiff are typical of the Class members' claims. Cummins expressly warranted to Plaintiff and the Class members that the Subject Engines would be free from defects and that, in the event of a defect, it would repair and correct the defect.  Cummins uniformly breached its express warranty to Plaintiff and Class members by failing to repair and correct the defect.

48.    The Subject Vehicles failed, malfunctioned, and were defective in a manner about which, upon information and belief, Defendant knew and in a manner in which Cummins failed to fix.

49.    Plaintiff, like all Class members, purchased and/or leased the Subject Vehicles in which the Subject Engines were defective.  Plaintiff, like all Class members, has been damaged by Defendant's misconduct.  Additionally, the factual bases of Defendant's misconduct are common.

50.    Plaintiff will fairly and adequately represent and protect the interests of the Classes.  Plaintiff's interests coincide with and are not antagonistic to the Class members' interests.  Plaintiff has retained counsel experienced and competent in complex, commercial, multi-party, consumer, and class action

litigation.  Plaintiff's counsel has litigated complex class actions in state and federal courts across the country.

## COUNT I - BREACH OF EXPRESS WARRANTY
## (PENNSYLVANIA CLASS)

51.    Plaintiff and the Pennsylvania Class incorporate the allegations set forth above as if fully set forth herein.

52.    As an express warrantor, manufacturer and merchant, Cummins had certain obligations under 13 Pa. Cons. Stat. Ann. § 2313 to conform the Subject Vehicles, Subject Engines, Exhaust Systems, and on-board diagnostic systems to the express warranties.

53.    When Plaintiff and the Pennsylvania Class purchased and/or leased the Subject Vehicles, Cummins expressly warranted under its warranties that the Subject Engines and the Exhaust System and their on-board diagnostic systems were free from defects in material and workmanship.

54.    Cummins provides a base engine warranty against  defects  in  material and workmanship for two years, 250,000 miles, or 6,250 hours of operation, whichever occurs first.

55.    Cummins also expressly warranted that the Subject Engines, Exhaust Systems and the on-board diagnostic systems in the Subject Vehicles were engineered to run without problems for at least 250,000 miles.

56.    Cummins further warranted the Subject Vehicles' DPF would operate without replacement for 200,000 miles.

57.    Cummins did not provide disclosure about the problems and defects set forth in this Complaint, which were known to Defendant at the time of sale or lease to Plaintiff and the Pennsylvania Class.  Cummins' warranties are unenforceable and unconscionable for this reason.  As a result, Plaintiff and the Pennsylvania Class did not receive the Subject Engines expressly warranted by Cummins.

58.    Cummins breached its warranties by placing the Subject Engines into the stream of commerce with knowledge and malicious indifference that they had the problems and defects set forth herein at the time of sale to Plaintiff and the Pennsylvania Class.

59.    Cummins further breached its warranties by delivering Subject Engines with problems that were worth less to Plaintiff and the Pennsylvania Class than the Subject Engines promised and warranted by Defendant.  Plaintiff and the Pennsylvania Class paid for Subject Vehicles that were supposed to contain Subject Engines free from defects but received vehicles that were worth the equivalent of Subject Vehicles that did not contain those components.

60.    Cummins further breached its express warranties because it did not cover the expenses associated with replacing the defective materials and

workmanship in the Subject Engines.  Cummins further breached these express

warranties because the replacement parts used in the repairs suffered from the

same substandard materials and workmanship.

61.    Cummins, through its partners and their authorized service providers,

has failed and refused to conform the Subject Engines to the express warranties

and Cummins' conduct, as set forth throughout this Complaint, has voided any

attempt on its part to disclaim liability for its actions.

62.    Plaintiff and the Pennsylvania Class used the Subject Vehicles in a

manner consistent with their intended use and performed all duties required under

the terms of the warranties, except as may have been excused or prevented by the

conduct of Cummins or by operation of law in light of Cummins' unconscionable

and/or fraudulent conduct set forth throughout this Complaint.

63.    Cummins received timely notice regarding the problems at issue in

this Complaint and, notwithstanding such notice, has failed and refused to offer an

effective remedy.

64.    Any attempt by Cummins to limit Plaintiff's and the Pennsylvania

Class's legal rights or remedies by relying on the agreements signed by Plaintiff

and the Pennsylvania Class is improper based on Cummins' malicious, knowing

and intentional concealment of the problems and defects prior to the Subject

Vehicle sales, and any such effort to disclaim or otherwise limit liability for the

problems and defect at issue is null and void based on Cummins' deceptive and/or fraudulent conduct prior to and after Plaintiff and the Pennsylvania Class's purchase of the Subject Vehicles.

65.    Plaintiff suffered damages caused by Cummins' breach of its express warranties and is entitled to recover damages as set forth herein, including the loss attributable to the value of the Subject Vehicles promised to the value of those received, the loss attributable to the diminished value of Plaintiff's Subject Engines, loss of use, as well as the monies spent and to be spent to repair and/or replace its Subject Engines.

## COUNT II - BREACH OF EXPRESS WARRANTY
## (UTAH CLASS)

66.    Plaintiff and the Utah Class incorporate the allegations set forth above as if fully set forth herein.

67.    As an express warrantor, manufacturer and merchant, Cummins has certain obligations under Utah Code § 70A-2-313 to conform the Subject Vehicles, Subject Engines, Exhaust Systems, and on-board diagnostic systems to the express warranties.

68.    When Plaintiff and the Utah Class purchased the Subject Vehicles, Cummins expressly warranted under the warranties that the Subject Engines and the Exhaust Systems and their on-board diagnostic systems were free from defects in material and workmanship.

69.    Cummins provides a base engine warranty against defects in material and workmanship for two years, 250,000 miles, or 6,250 hours of operation, whichever occurs first.

70.    Cummins also expressly warranted that the Subject Engines, Exhaust Systems and their on-board diagnostic systems in the Subject Vehicles were engineered to run without problems for at least 250,000 miles.

71.    Cummins further warranted the Subject Vehicles' DPF would operate without replacement for 200,000 miles.

72.    Cummins did not provide disclosure about the problems and defects set forth in this Complaint, which were known to Defendant at the time of sale or lease to Plaintiff and the Utah Class.  Cummins' warranties are unenforceable and unconscionable for this reason.  As a result, Plaintiff and the Utah Class did not receive the Subject Engines expressly warranted by Cummins.

73.    Cummins breached its warranties by placing the Subject Engines into the stream of commerce with knowledge and malicious indifference that they had the problems and defects set forth herein at the time of sale to Plaintiff and the Utah Class.

74.    Cummins further breached its warranties by delivering Subject Engines with problems that were worth less to Plaintiff and the Utah Class than the Subject Engines promised and warranted by Defendant.  Plaintiff and the Utah

Class paid for Subject Vehicles that were supposed to contain Subject Engines free from defects but received vehicles that were worth the equivalent of Subject Vehicles that did not contain those components.

75.    Cummins further breached its express warranties because it did not cover the expenses associated with replacing the defective materials and workmanship in the Subject Engines.  Cummins further breached these express warranties because the replacement parts used in the repairs suffered from the same substandard materials and workmanship.

76.    Cummins, through its partners and their authorized service providers, has failed and refused to conform the Subject Engines to its express warranties and Cummins' conduct, as set forth throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

77.    Plaintiff and the Utah Class used the Subject Vehicles in a manner consistent with their intended use and performed all duties required under the terms of the warranties, except as may have been excused or prevented by the conduct of Cummins or by operation of law in light of Cummins' unconscionable and/or fraudulent conduct set forth throughout this Complaint.

78.    Cummins received timely notice regarding the problems at issue in this Complaint and, notwithstanding such notice, has failed and refused to offer an effective remedy.

79.    Any attempt by Cummins to limit Plaintiff's and the Utah Class's legal rights or remedies by relying on the agreements signed by Plaintiff and the Utah Class is improper based on Cummins' malicious, knowing and intentional concealment of the problems and defects prior to the sales or leases, and any such effort to disclaim or otherwise limit liability for the problems and defect at issue is null and void based on Cummins' deceptive and/or fraudulent conduct prior to and after Plaintiff's and the Utah Class's purchase of the Subject Vehicles.

80.    Plaintiff suffered damages caused by Cummins' breach of the express warranties and is entitled to recover damages as set forth herein, including the loss attributable to the value of the Subject Vehicles promised to the value of those received, the loss attributable to the diminished value of Plaintiff's Subject Engines, loss of use, as well as the monies spent and to be spent to repair and/or replace its Subject Engines.

## COUNT III - BREACH OF CONTRACT/COMMON LAW WARRANTY (UTAH CLASS)

81.    Plaintiff and the Utah Class incorporate the allegations set forth above as if fully set forth herein.

82.    To the extent Cummins' obligations under the warranties are deemed not to be a warranty under the Utah Code, Plaintiff pleads in the alternative under common law warranty and contract law. Cummins limited the remedies available to Plaintiff and the Utah Class to just repairs and adjustments needed to correct

defects in materials or workmanship, and/or warranted the quality or nature of those parts and services to Plaintiff and the Utah Class.

83.    Cummins breached this warranty or contract obligation by, among other things, failing to repair the defects in the Subject Vehicles, Subject Engines, Exhaust Systems and their on-board diagnostic systems.

84.    Plaintiff and the Utah Class members are intended third-party beneficiaries of contracts between Cummins, PACCAR and their dealers; specifically, they are intended beneficiaries of the warranties. The dealers were not intended to be the ultimate consumers of the Subject Engines and have no rights under the warranty agreements provided with the Engines. The warranty agreements were designed for and intended to ultimately benefit the consumers only.

85.    As a direct and proximate result of Defendant's breach of contract or common law warranty, Plaintiff and the Utah Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff and the Class members request judgment as follows:

I.      Awarding all damages requested in the Complaint including direct, compensatory, consequential and incidental damages;

II.     Awarding treble damages, attorneys' fees, costs and all other remedies provided by law;

III.    Awarding pre- and post-judgment interest;

IV.     Awarding attorneys' fees, costs, and disbursements in this action; and

V.      Awarding such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and the Class members hereby demand a trial by jury as to all issues so triable.

Date:  January 17, 2017              SHEPHERD, FINKELMAN, MILLER
                                       & SHAH, LLP

                            By:    */s/James C. Shah*
                                   James C. Shah
                                   Natalie Finkelman Bennett
                                   475 White Horse Pike
                                   Collingswood, NJ  08107
                                   Tel.: 856-858-1770
                                   Fax: 866-300-7367
                                   jshah@sfmslaw.com
                                   nfinkelman@sfmslaw.com

                                   James E. Cecchi
                                   CARELLA, BYRNE, CECCHI, OLSTEIN,
                                   BRODY & AGNELLO, P.C.
                                   5 Becker Farm Road
                                   Roseland, NJ  07068
                                   Tel.: 973-994-1700
                                   Fax:  973-994-1744
                                   jcecchi@carellabyrne.com